**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 18 B 04322 |
| Michael Novak, | ) | HON.  Jacqueline P. Cox |
| | ) | CHAPTER 7 |
| DEBTOR. | ) | |

**RESPONSE TO UNITED STATES TRUSTEE'S MOTION TO EXAMINE
FEES OF DEBTOR'S COUNSEL**

NOW COMES, The Semrad Law Firm, L.L.C. ("Semrad"), for their Response to the United States Trustee's Motion to Examine Fees of Debtor's Counsel, and states as follows:

### I.     Statement of Facts

Michael Novak ("Debtor") came in for a consultation to the Semrad Law Firm, LLC ("Semrad") on February 10, 2018 for a free consultation.  Debtor advised Semrad he was being threatened with garnishment from a vehicle deficiency and desired bankruptcy protection.  After meeting with an attorney, Debtor decided to move forward with a Chapter 7 filingAt the consultation, Debtor was advised not only about the entire bankruptcy process, but also about how Semrad would agree to represent Debtor for no money down for all the pre-petition work by signing the Contract for Legal Services ("Pre-Petition Contract"), and then voluntarily enter into a second retainer agreement ("Post-Petition Agreement") for all post-petition work. At the time of the consultation, Debtor only had $180.00 in his bank account, so Semrad agreed to represent Debtor for no money down.

Debtor subsequently returned to Semrad's office on February 17, 2018 and met with an attorney to have his case prepared. Debtor subsequently reviewed with Semrad and signed the Pre-Petition Contract which in bold and conspicuously stated in the first provision:

> **Having been advised that I am not obligated to sign this agreement for legal services and that I may consult with another attorney as to whether I should do so; and having been advised that any previous agreement to pay the Semrad Law Firm, LLC any additional money is now unenforceable pursuant to my filing bankruptcy; and having been further advised that I can choose to retain another attorney apart from the Semrad Law Firm, LLC I agree to the following:**…

The Pre-Petition contract also spelled out specifically all pre-petition services covered such as preparing and filing the petition. The Pre-Petition contract also explained that Semrad would not be charging Debtor for any pre-petition services, nor charging Debtor for any expenses such as credit reports and tax transcripts. After reviewing the Pre-Petition contract, the Debtor signed it and subsequently filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. The voluntary petition, including Schedules A-J, the Statement of Financial Affairs and Statement of Currently Income, and the Disclosure of Compensation for Attorney for the Debtor ("2016(b)") was filed at 12:11:20 p.m. followed by the Certificate of Credit Counseling at 12:12:53 p.m. and the Statement of Current Monthly Income at 12:13:19 p.m.

The 2016(b) filed along with the attached pre-petition contract, disclosed the agreed upon fee for services of $1,765.00 as well as the services that would be performed with Pre-Petition Contract prior to filing his case. The Debtor reviewed along with Semrad the Pre-Petition Contract and discussed any conflicts and gave consent to file his case.

After the case was filed, the Debtor and Semrad reviewed and discussed the Zero Down Post-Petition Contract for Chapter 7 Legal Services ("Post-Petition Contract").[1] The Post-Petition Contract straightforwardly and explicitly states the services to be provided by Semrad to represent him in the bankruptcy:

> the scope of the services will include continued preparation and amendment, if necessary, of schedules; preparation and attendance of the Section 341 Meeting of Creditors; review and attendance, if necessary, to motions for stay relief, review of any redemption agreements; review of any reaffirmation agreements; case administration and monitoring, motions to reopen, if necessary, as well as a post discharge review of my credit report to ensure accurate reporting." , not merely the limited remaining services the UST states in its pleadings.  The Post-Petition Contract states explicitly the services to be provided by retaining Semrad's to represent him in the bankruptcy.

The Post-Petition contract also gives the Debtor a 10-day cooling off period to sign the contract.  After reviewing the Post-Petition Contract, the Debtor voluntarily signed it at 12:30 p.m., nineteen minutes after the case was filed.  Subsequently, Semrad filed the amended 2016(b), attaching the Post-Petition Contract.

## II.     The Post-Petition Fees Meet the Value of Post-Petition Services

Semrad did not charge a disproportionate amount of fees for post-petition services.  Section 329 of the United States Bankruptcy Code allows the court to examine fees paid to an attorney and if such fees exceed the reasonable value of these services, to cancel such agreement.  In examining reasonableness of fees "courts are guided by section 330". *In re Jackson*,

---

[1] Despite U.S. Trustee's assertion that the Post-Petition Contract was agreed to pre-petition, the Post-Petition contract is an actual post-petition contract.  It contains an offer, acceptance and consideration, the consideration being the services to be rendered post-petition. See *In re Griffin*, 313 B.R. 757, 769-770 (Bankr. ND. Ill. 2004)

401 B.R. 333, 341 (Bankr. N.D. Ill 2009). Section 330 states that "reasonable compensation depends on "the nature, the extent, and the value" of the services. *Id.*

Whether fees are reasonable should be determined on a case by case basis. The United States Trustee ("U.S. Trustee") is under the belief that because a "case does not appear to present any complex issues", that no other work was or will be done on this case.[2] There is no denying that some cases are far simpler than others, however, despite a case appearing simple on its face does not mean it is simple in practice

For the U.S. Trustee to assume that the *only* work to be done on the case is attending the meeting of creditors, filing a debtor education certificate, and perhaps signing two reaffirmation agreements is presumptuous. See U.S. Trustee's Motion, Page 7, paragraph 19. Under that blanket assumption, every case they believe to be simple deserves a minimal set flat fee. The U.S. Trustee fails to recognize the other services that are provided to Debtors. Generally, the other services to be provided include but are not limited to: 1) sending the notice of filing to creditors; 2) correspondence with creditors including but not limited to stopping payroll garnishments, unfreezing bank accounts from lawsuit judgments, and getting back funds accidentally taken by creditors post-petition; 3) Debtor phone calls; 4) sending pay advices and tax returns, and any other requested documents to the Chapter 7 Trustee; 5) filing any necessary amendments; 6) attending the 341 meeting of creditors; 7) rescheduling and attending a second 341 meeting if necessary[3]; 7) reviewing and negotiating reaffirmation agreements; 8) correspondence and negotiations with Chapter 7 Trustee if necessary; 9) completing U.S. Trustee audits when applicable; 10) filing motions to redeem; 11) filing motion to avoid liens; 12) defending potential motions to dismiss or

---

[2] See U.S. Trustee's Motion to Exam Fees, FN3.
[3] Semrad does not charge an additional fee for attending a second 341 if the Debtor misses the first 341 meeting unlike other firms that do charge for this.

4

briefing any other potential legal issues; 13) prosecuting automatic stay violations under Section 362 and discharge violations under Section 524(a)(2); 14) filing the debtor education certificate; and 15) post-discharge services such as routine questions, duplicate copies of discharge order, and sending *In re Mendiola* letters.[4]  Additionally, the last day to object to the discharge in this case is not scheduled until May 21, 2018, leaving at least several more weeks for any services that may need to be performed.  Should the Debtor later decide to rescind a reaffirmation agreement, which may later turn out to be in his best interest, Semrad will do that work too.

In this instant case, Semrad has already done far more than what the U.S. Trustee assumes (See Exhibit A, Itemization of Fees)[5].  Not only has Semrad attended the meeting of creditors and made sure the debtor education certificate was timely filed, Semrad has also counseled the Debtor on post-filing matters, reviewing reaffirmation, surrender, or redemption options regarding his vehicle, creditor emails, responded to Debtor's phone calls and emails, etc.  Further, Semrad did not just "perhaps obtain the Debtor's signature on two reaffirmation agreements…".  See U.S. Trustee's Motion, pg. 7.  In fact, Semrad does far more than obtain signatures for the reaffirmation agreements. Semrad reviews them to ensure they comply with §524(c) and (d), reviews the terms

---

[4] Semrad encourages all of its clients to obtain a free credit report post-discharge from them at no additional charge to ensure correct reporting because a fresh start and rebuilding credit are among the primary goals of many debtors filing bankruptcy.

[5] Rule 1.5 of Illinois Rules of Professional Responsibility states several factors in determining when a attorney's fees would be reasonable.  Factors relevant to the case at bar includes:  *1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly*.  In the case at bar, Semrad has attached a time sheet exhibit showing that it has earned it's post-petition fees; *3) the fee customarily charged in the locality for similar legal services*; In the case at bar, Semrad's post-petition fees of $1,765 is in line with other law firms in this district's fee, and in many cases are lower for similar type of Chapter 7 fees. See Exhibit B; *4) the amount involved and the results obtained*.  In the case at bar, the Debtor has already attended the 341 meeting, and had his Personal Financial Management Course completed.  This case like the vast majority of Semrad's Chapter 7 cases end up receiving a successful discharge.; *5) the time limitations imposed by the client or circumstances*.  In the case at bar, Debtor was under pressure to file for bankruptcy relief to stop creditor harassment and the threat of garnishment which filing did stop.; and *7) the experience, reputation, and ability of the lawyer or lawyers performing the services;* Semrad has been representing debtors in Chapter 7 and Chapter 13 bankruptcies for over 14 years.  In that time, Semrad has filed and obtained thousands of successful discharges for debtors in Chapter 7s and Chapter 13s.

5

with the debtor, and after they are reviewed and signed, mails the reaffirmation to the creditor and monitors to make sure they are timely filed. Additionally, the last day to object to the discharge in this case is not scheduled until May 21, 2018, leaving at least several more weeks for any services that may need to be performed. Accordingly, the U.S. Trustee's statements are not only misguided but speculative and premature. It is also a distinct possibility that Semrad's attorney fees for post-petition services may exceed the amount the Debtor paid, however since Semrad is operating on a flat fee agreement, the Debtor would not be charged any more than the agreed upon $1,765.00.

Reasonable value of post-petition services is a question of fact, and not a matter of law. It is Semrad's position that in order to examine reasonableness of fees either an evidentiary hearing is necessary or a prove-up of counsel's time. In the instant case, Semrad is able show through their timesheet that the services performed both pre-petition and post-petition were performed in accordance with the respective agreements. See Exhibit A. Furthermore, the fees charged for the services were charged in accordance with the Pre-Petition Contract and Post-Petition Contract. Aside from the U.S. Trustee's belief that this is a straightforward case based on the filed schedules, they fail to have any knowledge of what was done on or for the Debtor's behalf after the case was filed. This Court should deny the United States Trustee's Motion to Examine Fees based on the foregoing.

### III. The Semrad Law Firm, LLC's $1,765 Post-Petition Fees is in Line with Market Rates

In addition to the specific facts of this case demonstrating that $1,765 is a reasonable flat fee for post-petition services, a survey of fees from other consumer bankruptcy firms practicing in the Northern District of Illinois shows that $1,765 is in line with other firms' fees (See attached Exhibit

6

B). The attached exhibit illustrates that many other firms in this jurisdiction file cases using pre-petition and post-petition contracts, and the post-petition fees often go far above the $1,765.00 with some approaching $3,000.00. Semrad is not suggesting these firms are overcharging, merely that Semrad's fees are not only justifiable from an itemized standpoint, but from a market standpoint as well.

**IV. Semrad's Post-Petition Fee Structure Does Not Circumvent The Limitation Set Forth In *Bethea***

The U.S. Trustee argues that Semrad's post-petition fee structure is an attempt to convert a pre-petition obligation into a post-petition obligation in contravention of *Bethea*. *Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125 (7th Cir. 2003). *In re Bethea* is distinguishable from the case at hand. In *Bethea*, the Court dealt with whether a pre-petition contract for post-petition services was dischargeable under §523(a). In *Bethea*, the Debtors signed one contract, prior to filing, that allowed for attorney fees to be paid in installments after filing. Debtor's counsel continued to collect fees post-petition but did not have the Debtor's sign a second retainer agreement. The Court held that post-petition fees were dischargeable under §523.

*Bethea* is distinguishable from the current case because the Debtor signed a second retainer agreement post-petition and therefore created a non-dischargeable debt. *Bethea* did not rule on the enforceability of an obligation to pay attorney fees under an agreement made after a bankruptcy is filed. In fact, *Bethea* distinguished a pre-petition agreement from a post-petition agreement and noted that a post-petition agreement to pay attorney fees is not dischargeable (See *In re Slabbinck*, 482 B.R. 576, 581 (Bankr. E.D Mich. 2012)).

The 7th Circuit Court in *Bethea* further offered suggestions on how to resolve the issue of payment of post-petition attorney fees without making the client pay everything up front stating:

> For what it may be worth, however, we do not share the view that taking § 727(b) at face value necessarily injures deserving debtors. Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins-for a lawyer's aid is helpful in prosecuting the case as well as in filing it.

*Bethea*, 352 F.3d 1125 at 1128.   That sentiment is further echoed in *Griffin*, where the Court mentions as a possibility of the debtor and counsel entering in to a pre-petition and post-petition contract.  *In re Griffin*, 313 B.R. 757 (N.D. Ill. 2004).

> A second potential solution to the problem posed by *Bethea* would be for the debtor and the bankruptcy attorney to enter into a pre-petition retention contract requiring the attorney to perform either no post-petition services or very limited ones not including redemption work; then these parties could potentially enter into a post-petition contract for post-petition services the attorney has not already agreed to perform, creating a new post-petition claim.

*Id*. at 769.[6]

The fee structure in these types of cases serves as a benefit to the many debtors who cannot afford to pay attorney fees up front.  By allowing debtors to file bankruptcy without having to pay

---

[6] Other courts in dicta have also discussed how post-petition contracts could be allowable.  See *In re Mansfield,* 394 B.R. 783 at 792-793 (Bankr. E.D. Penn. 2008) ("It follows that an attorney's right to payment for legal services performed post-petition pursuant to a fee agreement which, in some manner, segregates pre-petition fees from post-petition fees (as opposed to a flat fee agreement pursuant to which an attorney agrees to perform both pre-petition and post-petition services for a lump or fixed sum) arises when the post-petition services are performed…[t]he key to recovery for post-petition services, therefore, lies in the terms of the attorney's fee agreement. The fee agreement must segregate the fees for pre-petition work from the fee(s) for post-petition work."); *In re Waldo*, 417 B.R. 854 (Bankr. E.D. Tenn. 2009) See also *In re Lawson*, 437 B.R. 609 at 664 (Bankr. E.D. 2010)  ("The following options, however, which have been employed by other courts, appear to fall within the scope of potential and allowable solutions:…(2) revising retainer agreements and expressly designating pre-petition services, which are paid pre-petition, and post-petition services, which shall be paid post petition…"; *In re Hines*, 147 F.3d 1185 at 1190 (9th Cir. 1998); See also *In re Chandlier*, 292 B.R. 583 at 588 (Bankr. W.D.Mich. 2003)  ("…[A] chapter 7 debtor's attorney might avoid the compensation quandary by initially contracting only to provide pre-bankruptcy services and by initially accepting payment only for those pre-petition services.  Then the attorney could later enter into a separate postpetition agreement to provide any necessary postpetition services."); and *Rittenhouse v. Eisen*, 404 F.3d 395 at 397 (6th Cir. 2005) ("§ 329 covers also post-petition attorneys fees, which are not dischargeable.")

attorney fees up front, it allows access to the bankruptcy courts to those who need it the most. *Bethea* at 1127-28.

### A. *In Re Slabbinck*

The U.S. Trustee asserts that Semrad has violated Local Rule 2090-5(B) and that it's post-petition contract constitutes impermissible unbundling. However, the U.S. Trustee cites no case law which is on point with the current fact pattern. The holdings for *Bethea* and *Griffin* relate to pre-petition contracts, *Slabbinck* and *Walton*, on the other hand, deal with post-petition contracts, and support Semrad's position both that post-petition contracts are allowable, and that $1,765 is a reasonable post-filing fee. *In re Slabbinck,* 482 B.R. 576 at 583, 596; see also *In re Walton*, 469 B.R. 383 at 387 (M.D. Fla. 2012) ("…there is no prohibition against a debtor making postpetition installment payments for postpetition services…the court must uphold the validity of the modified two-contract procedure absent some compelling reason not to do so.")

*Slabbinck* dealt with a consumer Chapter 7 with a pre-petition contract for $1,000.00 and a post-petition contract for $2,000. With slightly different wording, but a substantially similar argument, the U.S. Trustee in *Slabbinck* avers that the post-petition contract is a pre-petition contract. This argument is quickly dealt with by the Court finding they are "two separate agreements" and the allegation that they are one is "not borne out by the facts." *Id.* at 583. The matter of impermissible unbundling provides a more complex question. After a lengthy discussion of relevant bankruptcy law and ethics rules of the state of Michigan (MRPC), the court holds that "an agreement to limit an attorney's legal services in connection with an individual Chapter 7 bankruptcy case by unbundling the pre-petition service from the post-petition services, is not per se prohibited by the MRPC and does not necessarily warrant any relief under 329 of the Bankruptcy Code." *Id.* at 589. This language of course leaves the door open for improper

9

contracts, but the contracts at issue in *Slabbinck*, as the contracts at issue in the instant case, do not constitute impermissible unbundling.

### V. Allowing Post-Petition Contracts is a Sound Policy

Although not provable with legal research or logical reasoning, working in consumer bankruptcy with individuals who live in the margins of society provides a certain education. People who do not have the same upfront, day in day out experiences cannot grasp the realities many individuals seeking debt relief face. For those of us fortunate enough to work in Bankruptcy Court, on any side of the proceedings, we meet these individuals face to face and sift through their finances. With enough experience it becomes apparent that for many individuals accumulating $1,000.00 is a herculean feat. Prominent bankruptcy publications have compared the access no-money down Chapter 13s provide to the public and lament that similar options are not available to worthy Chapter 7 debtors.[7] It is believed that certain individuals end up filing Chapter 13s solely because a no money down option is made available, even though Chapter 7 may be the better option. Also, demanding large fees upfront would likely lead to an uptick in pro se filings, which also put a strain on the resources of the Court. In fact, this Honorable Court discourages pro se filings on its very own website.[8] Through its motion to examine fees, the U.S. Trustee is seeking to invalidate the method employed by Semrad which takes care to comport with the rules of the Court while at the same time opening up legal services to individuals who would

---

[7] Foohey, P., Lawless, R., Porter, K., Thorne, D., "Attorneys' Fees and Chapter Choice: Exploring 'No Money Down' Chapter 13 Bankruptcy, *American Bankruptcy Institute Journal*, 2017, Vol. XXXVI, No. 6, pgs. 20, 62-63. "The ultimate goal of these suggestions is not to abolish 'no money down' chapter 13s, but to allow all debtors to weigh the benefits and costs of filing chapter 7 or 13 without having to consider how they will pay the attorney's fees."

[8] Northern District of Illinois, https://www.ilnb.uscourts.gov/filing-without-attorney, *Filing Without an Attorney* "While individuals can file a bankruptcy case without an attorney or 'pro se,' it is extremely difficult to do it successfully… **hiring a competent attorney is strongly recommended.**" (emphasis in original)

otherwise be left to fend for themselves. As has been noted in other courts, for a Court to disallow the practice of post-petition contracts will have the "effect of depriving needy individual debtors who cannot afford to pay in advance." *In re Slabbinck* 482 B.R. 576 at 597.

### VI. The Zero Down Fee Structure Does Not Impermissibly Unbundle Legal Services

The United States Trustee argues that agreeing to only receive compensation for post-petition work exceed the bounds of permissible unbundling. For the following reasons, this argument is without merit:

#### A. The Zero Down Fee Structure Does Not Violate Local Bankruptcy Rule 2090-5(B)

The first paragraph of The Semrad Law Firm's Pre-Petition contract reads

> I do hereby retain the law firm of The Semrad Law Firm, LLC to represent my legal interests solely in a Bankruptcy case filed under Chapter 7 of the United States Bankruptcy Code. I further understand that this representation DOES NOT INCLUDE defending my interest in any adversary proceeding filed against me nor does this representation cover state court proceedings or criminal litigation.[9]

This language fully comports with the mandate of 2090-5(B). Semrad is not failing to perform, or contract away, a single fundamental or core obligation. The only services carved out in the contract are adversary proceeding representation and representation in matters related to reopening the case.

---

[9] See U.S. Trustee's Motion, Ex. A – pg.55

### B. Rule 2091-1(B) Permits Post-Petition Contracts

As stated previously, in December 2002, the Seventh Circuit held in *Bethea* that pre-petition contracts for post-petition services were dischargeable debts. Two months to the day after the *Bethea* opinion, this Court enacted a standing order which was later adopted as Local Rule 2091-1(B). This order reads,

> In a case under Chapter 7 of the Bankruptcy Code where (1) the debtor's attorney has agreed to represent the debtor conditioned on the debtor entering into an agreement after the filing of the case to pay the attorney for services rendered after the filing of the case, and (2) the debtor refuses to enter into such an agreement, the court may allow the attorney to withdraw from representation of the debtor, on the motion of the attorney with notice to the debtor, the trustee, and the U.S. Trustee. - Bankr. N.D. Ill. R. 2091-1(B)

An unambiguous takeaway of this rule is that the Bench allows attorneys to enter into post-petition contracts for post-petition services, and that withdrawal is explicitly permitted if the debtors decline to enter into a post-petition agreement. It is apparent from the timing of the entry of the standing order that the Court wanted to give attorneys a way to use post-petition contracts in light of the Seventh Circuit's dicta in *Bethea*. Local Rule 2091-1(B) creates an exception to Local Rule 2090-5(B) and allows attorneys to limit representation in the event of a debtor declining to enter into a post-petition contract.[10]

In its motion the U.S. Trustee states we "erroneously invoke Local Rule 2091-1(B) to hold the threat of withdrawal over the Debtor."[11] Apparently, the Firm is erroneously invoking this rule due to the phrase, "I understand I will be under no obligation." This clause is not a waiver of Semrad's rights under Local Rule 2091-1(B), it is an acknowledgment of the Debtor's volition. A debtor has the right to not sign a post-petition contract, but Semrad retains its right to withdraw

---

[10] The U.S. Trustee admits that Rule 2091-1(B) is an allowable exception to Rule 2090-5(B). See U.S. Trustee's Motion, page 9, paragraph 24
[11] See U.S. Trustee's Motion, page 9, paragraph 24.

upon the decision of the client to not enter into a post-petition agreement. To interpret this clause in the manner the U.S. Trustee has is to warp Semrad's intentions. A juxtaposition of Semrad's contract with the post-petition contract of Geraci Law reveals the difference. In its post-petition contract, Geraci Law states "We will not withdraw for non-payment if you decide not to sign a post-filing agreement...".[12] This clause could accurately be read as a plain waiver of The Geraci Law Firm's rights under Local Rule 2091-1(B). In diametric opposition, Semrad's contract states we "reserve the right to withdraw from… representation in the event" a second retainer is not signed.[13]

The mention of withdrawal is perceived by the U.S. Trustee as threatening, but this language is a representation of the bare facts of Local Rule 2091-1(B). Withdrawal is expressly permissible, and debtors need to be made aware of this important fact. Excluding this fact in the contract would be perhaps less threatening but certainly more deceptive. Clients deserve to know this relevant information.

### C. Local Rule 2091-1(B) Creates An Exception to Local Rule 2090-5(B)

The U.S. Trustee's assertion that Local Rule 2090-5(B) is not altered by Local Rule 2091-1(B) does not pass muster. Semrad's Pre-Petition Contract goes to great lengths to condition post-petition services on entering into a post-petition contract. If dedicating more than half of a pre-petition contract to an explanation of what the post-petition contract is, and explicitly reserving the right to withdraw in the event it is not signed is not enough to meet a standard of conditioning post-petition services on a post-petition contract, in what circumstance can an attorney's conduct can be squared with Local Rule 2091-1(B)? Even in a circumstance where an attorney is charging a nominal post-filing fee, under the U.S. Trustee's interpretation it would be an impermissible

---

[12] For example, see 18-04386, *In Re Gaither*, Dockett. No. 1, pg. 44
[13] See U.S. Trustee's motion, Ex B., p. 1

13

unbundling and the nominal fee would be subject to disgorgement. A more appropriate reading of the local rules is that 2091-1(B) creates more than a limited exception to 2090-5(B).

### D. The Post-Petition Contract is not a Pre-Petition Contract

The assertion in the second footnote of the motion to examine fees, that Semrad's post-petition contract is in fact a pre-petition contract,[14] also does not withstand scrutiny. In order for a post- petition contract to meet the description of Local Rule 2091-1(B), the attorney's representation must be conditioned on a post-petition contract. If the representation is conditioned on a post-petition contract by its very nature it must be contemplated pre-petition. The debtor's attorney knows post-petition events will occur. All bankruptcies have not just fundamental and core duties to carry out, but mandatory and compulsory events which need to occur post-petition. (see for example 11 U.S.C. §341, 11 U.S.C. §727(a)(11), et al)

To suggest a post-petition contract can be entered into within ten days of a bankruptcy filing without pre-petition negotiation and agreement is to paint a picture of a hapless attorney who discovers several days after filing that the work is not done and now must start the process of negotiation and agreement. By this line of reasoning, the preferred method of contract formation would be to file the bankruptcy, and then discuss fees. Suppose the debtor and the attorney cannot make an agreement. Since Local Rule 2091-1(B) allows withdrawal for failure to enter into a post-petition contract, this timing would seemingly lead to an increase in debtors left without their proverbial swim coach. On the other hand, if the attorney and the debtor know what the post-petition fee will be pre-petition, there is an elimination of any element of surprise. The proper concern is one of adequate knowledge. Debtors without adequate knowledge are at a material

---

[14] See U.S. Trustee's Motion to Exam Fees, FN2.

14

disadvantage, and susceptible to being overcharged by counsel. To withhold fee negotiations until the debtor already has a case number and a meeting date only exacerbates this disadvantage.

### VII. The Semrad Law Firm, LLC's Contracts do not Violate Illinois Rules of Professional Responsibility

Rule 1.2 of the Illinois Rules of Professional Conduct ("RPC") is also not abridged by the pre-petition and post-petition contract. As previously stated, both contracts states that Semrad represents Debtors "legal interests solely in a Bankruptcy case filed under Chapter 7 of the United States Bankruptcy Code." Also, both contracts only carve out adversary proceedings and fees earned after case closing. Certainly, none of these restrictions would constitute a contracting away of fundamental and core obligations. Conditioning post-petition services on a post-petition contract is done under the Local Rules of this Court, and a §329 motion brought under the bankruptcy code in a bankruptcy court should acknowledge that adherence to local rules on post-filing contracts should not constitute a breach of the State's rules of professional conduct for an improper limiting of the scope of representation. "Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law." See *Slabbinck* 482 B.R. 576 at 587, citing *In re Snyder*, 472 U.S. 634, 645 (1985) and *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006). State law, on the other hand, is used "for guidance." *Id.* Additionally, the Debtor was given informed consent before entering into both contracts. The first contract heavily references the fact that a second contract shall be forthcoming, and the second contact opens with a disclaimer in bold that no obligation exists to enter into the second contract.

15

**VIII.    The Zero Down Fee Structure Does Not Violate §528(a)(1)(A)**

Both the pre-petition and post-petition contracts satisfy the mandate of 11 U.S.C. §528(a)(1). Section 528(a)(1) requires debt relief agencies to "execute a written contract," explaining the legal services which will be provided, the applicable fee, and the terms of payment." In both the pre-petition and post-petition contract, The Semrad Law Firm covenants with the client to represent "legal interests solely in a Bankruptcy case filed under Chapter 7 of the United States Bankruptcy Code." Although concise, this one sentence encompasses the entirety of the legal service, and in line with Local Rule 2090-5(B) establishes that Semrad will be the "attorney of record on behalf of the debtor for all purposes in the bankruptcy case." The attorney fee of $1,765.00 and the reimbursable court filing fee of $335.00 are put in bold, heightening their conspicuity. Four items are singled out which are not included in these fees: the hourly rate for adversary proceeding representation, the court fee to amend schedules D, E, or F, a $1,000.00 flat fee for a motion to reopen a case to avoid a lien, and a $350.00 attorney fee for a motion to reopen. There is a clause stating the funds paid are non-refundable, and a general recitation of client responsibilities akin to the court approved retention agreement. The contract meets the requirements of Section 528(a)(1).

### IX. Conclusion

Post-Petition contracts are permitted by the Local Rules of this Court and address an ongoing concern of allowing access to counsel for indigent clients. Additionally, the $1,765 post-filing attorney fee charged by The Semrad Law Firm, LLC is not only justifiable do to the amount of work contemplated but is also in line with what other firms in the Northern District of Illinois charge. The contracts also comply with the Illinois Rules of Professional Conduct and 11 U.S.C §528.

WHEREFORE, The Semrad Law Firm respectfully requests this Honorable Court to enter an Order dismissing this Motion to Examine Fees of Debtor's Counsel and for such other and further relief as this Court deems fair and just.

                                                                  Respectfully Submitted,

                                                                  /s/ *Michael Miller*
                                                                  Attorney for Debtor

Janna Quarless (#6291905)
Michael Miller (#6288876)
Nathan Delman (#6296205)
The Semrad Law Firm, LLC
20 S. Clark, 28th Floor
Chicago, IL 60603
(312) 913-0625
 (312) 913-0625