UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MICHAEL NOVAK, | ) | CASE NO. 18-04322 |
| | ) | |
| DEBTOR. | ) | HON. JACQUELINE P. COX |

**UNITED STATES TRUSTEE'S REPLY TO THE SEMRAD LAW FIRM, LLC'S RESPONSE TO MOTION TO EXAMINE FEES UNDER 11 U.S.C. § 329(b) AND FED. R. BANKR. P. 2017(b)**

NOW COMES Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his attorneys, Elizabeth R. Brusa, Adam G. Brief, and Roman Sukley, and in reply to The Semrad Law Firm, LLC's ("Semrad") response to the U.S. Trustee's Motion to Examine Fees Under 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2017(b) (the "Motion") respectfully states as follows:

**Preliminary Statement[1]**

1. None of the facts revealed during the limited discovery conducted by the U.S. Trustee or the arguments contained in Semrad's response to the Motion (the "Response") alter the conclusion that this Court should examine Semrad's fees and cancel the Post-Petition Contract.

2. The crux of Semrad's Response is that (i) its post-petition fee of $1,765 is justified by the post-petition services rendered; (ii) Semrad's retainer agreements did not unbundle services as Semrad agreed in the Prepetition Contract to represent the Debtor for all purposes in the Bankruptcy Case; (iii) the "condition" required by Local Rule 2091-1(B) for attorney withdrawal should be read out of that rule; and (iv) the Prepetition and Post-Petition Contracts (collectively,

---

[1] The UST does not respond herein to each point Semrad asserts in its Response, but expressly reserves the right to do so at the contested hearing before the Court should the need arise.

1

the "Contracts") provide the Debtor with access to justice. Semrad's Response rings hollow, and this Court should overrule it.

3. Semrad's Response highlights that its Contracts are designed not to provide access to justice for the Debtor, but instead to advance Semrad's financial interests. Under the Contracts, Semrad converted its entire fee from a prepetition, dischargeable claim to a non-dischargeable, post-petition claim. In so doing, Semrad ensured guaranteed payment of its fees (via weekly post-petition debit card payments)[2] without competition from other creditors and without encountering the two most vital debtor protections in the Bankruptcy Code - the automatic stay and discharge injunction. In fact, this Bankruptcy Case is another instance in recent decisions exemplifying Semrad's practice of advancing its financial interests over those of its clients while running afoul of the Bankruptcy Code, the Bankruptcy Rules, and this Court's Local Rules. *See e.g., In re Gilliam,* 582 B.R. 459 (Bankr. N.D. Ill. 2018) (Barnes, J.).

4. Without even having to reach the issues under the Local Rules or Bankruptcy Code Sections 526 and 528, this Court can, and should, invalidate the Post-Petition Contract on grounds that it is a prepetition agreement and thus subject to the automatic stay and discharge injunction. As set forth more fully below, Semrad attorney Chris Pryor testified at his June 1, 2018, deposition (the "Pryor Dep.") that the Contracts' material terms (*i.e.*, services and fee amount) were fully negotiated and agreed to a full week before the Debtor's Petition was filed.[3]

---

[2] Semrad failed to disclose or file this agreement with the Court in violation of Local Rule 2016-1. *See e.g. In re Gilliam,* 582 B.R. 459, 466 (Bankr. N.D. Ill. 2018) (finding Semrad violated Local Rule 2016-1 for failing to disclose an analogous agreement with Chapter 13 debtors concerning accelerated payment of its attorneys' fees).

[3] At his June 1, 2018 deposition, the Debtor testified that he believed he was executing a duplicate contract when signing the Post-Petition Contract, thereby confirming that the Debtor did not understand the impact of the Post-Petition Contract or give informed consent for entering into that agreement. *See* Novak Dep. at 18:7-21, 19:3-23, attached as Exhibit A.

5.  Even if the Court addresses the additional arguments raised in the Motion and Response, the outcome should be the same. Semrad's contentions that the "condition" required under Local Rule 2091-1(B) should be read out of that rule and that the Prepetition and Post-Petition Contracts comply with Bankruptcy Code Section 528 are not supported by relevant facts or law, and this Court should overrule them. For these reasons, and the reasons stated more fully herein, this Court should grant the U.S. Trustee's Motion and find the Post-Petition Contract unenforceable.

### Point I

### The Post-Petition Contract is unenforceable under the Bankruptcy Code and relevant contract law.

6.  This Court should find the Post-Petition Contract unenforceable for two, independent reasons. First, the Post-Petition Contract is a prepetition agreement and thus unenforceable by Semrad by virtue of the automatic stay and discharge injunction. Second, the Post-Petition Contract is unenforceable under governing contract law because it is illusory. The undisputed facts described more fully herein bear out these conclusions, and none of Semrad's arguments in the Response overcome them.

*A. The Post-Petition Contract is a prepetition agreement subject to the automatic stay and discharge injunction.*

7.  In the Motion, the U.S. Trustee argues that the Post-Petition Contract is subject to the automatic stay and discharge injunction if the operative events to form that agreement occurred prepetition. *See* Motion, p.3, n.2. After filing the Motion, new facts as to the formation of Semrad's retention agreement were revealed during the U.S. Trustee's discovery in this case. Based on Mr. Pryor's unequivocal deposition testimony and Semrad's internal case records, the Debtor and Semrad formed the agreement, which was ultimately reduced to writing in the

3

Prepetition and Post-Petition Contracts, a full week before the Bankruptcy Case was filed. Thus, the Post-Petition Contract is not enforceable. Semrad's arguments in the Response fail to discuss the actual facts and issues *sub judice*. *See* Response, p. 14.

8.  "Under the Bankruptcy Code, a contract-based claim is a pre-petition claim if prior to filing the relationship between the debtors and the creditor contained all the elements necessary to create a right to payment under relevant contract law." *In re Griffin*, 313 B.R. 757, 762-63 (Bankr. N.D. Ill. 2004) (citations omitted) (Cox, J.). "The law is well settled that a contract requires an offer, acceptance, and consideration." *In re Mount Calvary Baptist Church*, 162 B.R. 181, 184 (Bankr. N.D. Ill. 1993) (citing *Serpe v. Williams*, 776 F.Supp. 1285, 1287-1288 (N.D. Ill. 1991)). "Consideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *In re Polo Builders, Inc.*, 388 B.R. 338, 361 (Bankr. N.D. Ill. 2008) (Schmetterer, J.). Consideration does not require physical performance; rather, "[a] promise for a promise is, without more, enforceable." *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (1997). So long as the exchange of promises is made with mutual assent as to the agreement's essential terms, often described as a meeting of the minds, an enforceable contract is formed. *See id.; Mount Calvary Baptist Church*, 162 B.R. at 184; *Acad. Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (1991).[4]

---

[4] The Post-Petition Contract is not subject to Illinois's Statute of Frauds as it is easily conceivable that the case would conclude in less than a year. Pursuant to Illinois's Statute of Frauds, some contracts must be written and signed by the party to be charged. *See* 740 Ill. Comp. Stat. 80/1 (requiring contracts whose performances cannot be fully completed in one year to be written and signed by the party to be charged); *see also American Kitchen Delights, Inc. v. Signature Foods, LLC*, 2018 WL 1394032, at *6 (N.D. Ill. Mar. 20, 2018) (slip op.) (stating, "The writing, however, is not itself required to be a valid contract – it simply needs to be evidence of a valid contract and its essential terms" (citing *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002))).

9.   At the Debtor's initial consultation on February 10, 2018 (the "Feb. 10 Consultation"), the Debtor and Semrad entered into an agreement wherein Semrad agreed to represent the Debtor in all aspects of a chapter 7 bankruptcy case in return for the Debtor's agreement to pay Semrad a total of $2,100 for such representation (the "Oral Contract"). More specifically, at the Feb. 10 Consultation, the Debtor not only consulted with Semrad attorney Anthony Kudron about filing a chapter 7 bankruptcy case, but he also negotiated and agreed to pay a flat fee of $2,100 for Semrad to provide all services in the Debtor's case. *See* Pryor Dep. T. at 36:18-24, 37:1-12, 38:13-24, 39:1-10, 82:23-24, 83:1-6; *Ex. C*, p. 2 (noting on February 10, 2018, "Ch 7 Consult with AJK Build set for 2/17/18 at 10:00 AM. $2,100.00"), attached as Exhibit B. Thus, the material terms of Semrad's retainer agreement with the Debtor were completely negotiated and agreed to on February 10. Indeed, Semrad states in the Response that the Debtor visited Semrad "on February 10, 2018 for a free consultation," at which the "Debtor was advised … about the entire bankruptcy process," and "Semrad agreed to represent the Debtor for no money down." Response p. 1.[5] This series of events is further supported by Semrad's internal case processing notes for the Bankruptcy Case (the "Stratus Notes"),[6] as well as Mr. Pryor's testimony at the Pryor Dep.

10.   After Semrad and the Debtor agreed to the $2,100 fee (comprised of the $335 filing fee and the $1,765 fee reflected on the Prepetition and Post-Petition Contracts) for Semrad's

---

[5] Although Semrad argues in the Response that the Debtor was also advised at the Feb. 10 Consultation about Semrad's representation for no money down under the Prepetition Contract, as well as the Debtor's opportunity to then voluntarily execute the Post-Petition Contract [*see* Response, p. 1], as will be described more thoroughly herein, Semrad's fee structure is actually a legal fiction. Under governing Illinois contract law, the agreement struck between the Debtor and Semrad at the Feb. 10 Consultation constitutes a binding contract, thereby rendering the Prepetition Contract simply a reduction of that previous agreement to writing and the Post-Petition Contract unenforceable as illusory.

[6] Semrad produced the Stratus Notes to the U.S. Trustee in response to a document request. A copy of the Stratus Notes is attached hereto and incorporated herein as Exhibit C.

5

representation in a chapter 7 bankruptcy case, the terms of this agreement were never again negotiated. *See* Pryor Dep. T at 47:8-20. In fact, Mr. Pryor never even discussed any of the material terms of the Oral Contract with the Debtor, other than to explain to the Debtor where those previously negotiated terms were reflected in the written Prepetition and Post-Petition Contracts. *See* Pryor Dep. T at 48:18-24, 49:1-16, 51:6-10 (Mr. Pryor simply transposed the $2,100 fee from the Stratus Notes into the form Prepetition and Post-Petition Contracts and further stating that Mr. Pryor did not change any of the other terms of the Contracts).

11. The Debtor and Semrad reached a meeting of the minds at the Feb. 10 Consultation. The Debtor accepted Semrad's offer to represent him for a flat fee of $2,100, and, in reliance on that agreement, the Debtor scheduled a return visit for February 17 to "build" his chapter 7 case. *See Ex. C* (noting that, on February 10, the Debtor's "build" was "set for 2/17/18," thereby indicating that the Debtor had agreed to all material terms, retaining Semrad to file his chapter 7 bankruptcy case, at the Feb. 10 Consultation, with only the actual "build" of the bankruptcy documents remaining for the return visit on February 17); *see also* Pryor Dep. T at 56:6-24, 57:1-11 (the terms of Semrad's representation of the Debtor were not negotiated after February 10); Novak Dep. T at 22:3-11 (testifying that the Debtor only considered filing a chapter 7 case, and this term was thus agreed upon at the Feb. 10 Consultation).

12. The Debtor and Semrad's exchange of promises constitutes valid consideration. Thus, each of the requisite elements for contract formation – specific terms, offer, acceptance, mutual assent, and consideration – occurred at the Feb. 10 Consultation, thereby rendering the Oral Contract binding and enforceable.

13. On February 17, the Debtor returned to Semrad's office to sign both the Prepetition and Post-Petition Contracts. The Prepetition and Post-Petition Contracts simply reduced to writing

6

the already fully formed and enforceable Oral Contract.[7] Although the Prepetition and Post-Petition Contracts set forth the specifics of Semrad's performance, the material terms of Semrad's promise to represent the Debtor in all aspects of a chapter 7 bankruptcy case were previously agreed to in the Oral Contract. No new material terms were set forth in the Prepetition and Post-Petition Contracts, and no further negotiations about the Oral Contract's terms occurred after the Feb. 10 Consultation.

14. Because the Oral Contract was fully formed at the Feb. 10 Consultation, it is a prepetition agreement. *See In re Griffin*, 313 B.R. at 769-70 (stating that a retainer agreement's "legally operative events – the offer, acceptance, and exchange of consideration must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6)"). And because the Prepetition and Post-Petition Contracts simply reduce the Oral Contract to writing, rather than constituting new or different agreements in and of themselves, the Post-Petition Contract is likewise a prepetition agreement.[8] Accordingly, this Court should find that the Post-Petition Contract is unenforceable by operation of the automatic stay and discharge injunction.

### B. *Alternatively, the Post-Petition Contract is an unenforceable illusory contract.*

15. Alternatively, the Post-Petition Contract is an unenforceable illusory contract. The law is well settled that "a promise to do something one is already obligated to do is no consideration and creates no new obligation." *Moehling v. W.E. O'Neil Const. Co.*, 20 Ill. 2d 255, 266 (1960).

---

[7] Although attorney retainer agreements must be in writing per section 528(a)(1) of the Bankruptcy Code and Local Rule 2016-1, such agreements are not required to be written to be enforceable contracts under governing Illinois law. Thus, an attorney retainer agreement may violate section 528 and Local Rule 2016-1 while nonetheless constituting an enforceable contract.

[8] This conclusion remains the same even if the parties intended for their agreement reached on February 10th to be reduced to writing in order to be binding.

7

In *In re Griffin*, this Court considered a typical prepetition contract that already provided for legal services beyond filing a petition and stated that "forcing the debtor into a new post-petition contract in this scenario creates an issue of enforceability as a result of the pre-existing legal duty to perform." *Griffin*, 313 B.R. at 767-68. Indeed, under Local Rule 2090-5(B), once a debtor's attorney files a petition, that attorney is obligated to represent the debtor for all purposes in that bankruptcy case. *See* Bankr. N.D. Ill. R. 2090-5(B).

16. Here, the Prepetition Contract sets forth all of the services that will be provided to the Debtor for the entire case. In fact, Semrad argues that in complying with Local Rule 2090-5(B), it is obligated under the Prepetition Contract to represent the Debtor for all purposes in his case. *See* Response, p. 11. Semrad further argues that "[t]he only services carved out in the [Prepetition] [C]ontract are adversary proceeding representation and representation in matters related to reopening the case." *Id.* Further, Mr. Pryor testified that each of the services enumerated in the Prepetition and Post-Petition Contracts falls within the scope of representing the Debtor in a chapter 7 case. *See* Pyror Dep. T at 69:24, 70:1-24, 71:1-24, 72:1-21. In other words, before executing the Post-Petition Contract, Semrad was already obligated to perform all of the services required in the Bankruptcy Case.

17. The only additional steps either party took in purporting to form the Post-Petition Contract was for the Debtor to sign the Post-Petition Contract and eventually to pay Semrad $1,765. Because Semrad was already obligated to represent the Debtor upon filing the Petition under the terms of the Prepetition Contract and Local Rule 2090-5(B), regardless of whether the Debtor executed the Post-Petition Contract, Semrad gave no additional consideration for the Post-Petition Contract. And because Semrad promised no additional or different performance after execution of the Prepetition Contract, Semrad's performance under the Post-Petition Contract was

8

nothing more than a pre-existing duty. Accordingly, this Court should find the Post-Petition Contract is illusory and unenforceable due to lack of consideration. *See Dohrmann v. Swaney*, 14 N.E.3d 605, 615 (Ill. App. 1st Dist. 2014) (stating, "Where the consideration for a contract is illusory, the contract will be invalidated for gross inadequacy of consideration"); *see also Mimica v. Area Interstate Trucking, Inc.*, 620 N.E.2d 1328, 1335 (Ill. App. 1st Dist. 1993) (stating that "where valuable economic rights were exchanged for an illusory promise we find the amount of consideration so grossly inadequate as to amount to none at all").

## Point II

### Semrad's Response fails to overcome the U. S. Trustee's showing that the Contracts violate the Local Bankruptcy Rules and Bankruptcy Code.

18. In the Response, Semrad fails to overcome the U. S. Trustee's showing that the Contracts violate the Local Bankruptcy Rules and Bankruptcy Code, and this Court should thus find the Post-Petition Contract unenforceable. While Semrad's concession regarding Local Rule 2090-5(B) obviates further inquiry into unbundling, its position regarding Local Rule 2091-1(B) cannot be sustained. The same conclusion holds as to the violation of Bankruptcy Code Section 528(a)(1)(A).

    A.    *Semrad's admission that it is obligated under the Prepetition Contract to serve as counsel for all purposes in the Bankruptcy Case obviates further inquiry into impermissible unbundling.*

19. In the Motion, the U. S. Trustee argues that Semrad impermissibly unbundled services in violation of Local Rule 2090-5(B). *See* Motion, p. 8-9. In response, Semrad contends that it did not engage in impermissible unbundling and concedes that, under the Prepetition Contract "…and in line with Local Rule 2090-5(B)," "Semrad will be the 'attorney of record on behalf of the debtor for all purposes in the bankruptcy case.'" *See* Response, p. 16; *see also id.* at 11 (stating that the only services carved out from the Prepetition Contract "are adversary

9

proceeding representation and representation in matters related to reopening the case"). Mr. Pryor reiterated and confirmed this conclusion. *See* Pryor Dep. T at 52:17-24, 53:1-13.

20. Semrad's admission resolves the U.S. Trustee's argument under Local Rule 2090-5(B). By conceding that under the Prepetition Contract Semrad became obligated to provide *all* services in the Bankruptcy Case, without regard as to whether such services were to be performed before or after the Petition Date, further inquiry into the question of unbundling is unnecessary.[9]

21. Despite the aforementioned concession, and in response to the U.S. Trustee's argument that Semrad violated Local Rule 2090-5(B), Semrad relies heavily upon *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012), a non-binding, bankruptcy court decision from the Eastern District of Michigan. The U.S. Trustee will address that decision out of an abundance of caution.

22. Semrad contends that the *Slabbinck* Court rejected the U.S. Trustee's argument that the post-petition contract at issue there was a pre-petition contract, saying that the *Slabbinck C*ourt "quickly" found they were "two separate agreements." Response, p. 9. There are two critical flaws with Semrad's contention. First, Semrad's description of the U.S. Trustee's argument is inaccurate. The U.S. Trustee there argued that the prepetition and post-petition contracts created one global agreement, and having two documents was a fiction. That is materially different from the argument the U.S. Trustee makes in Point I herein. Specifically, in Point I, the U.S. Trustee here demonstrates that the operative events for formation of Semrad's retainer agreement with the Debtor actually occurred prepetition. As such, the Post-Petition Contract is a document that reduces the prepetition Oral Contract to writing, thereby rendering the Post-Petition Contract a prepetition agreement which is subject to the automatic stay and discharge injunction.

---

[9] The U.S. Trustee reserves all arguments asserted in the Motion concerning the impermissibility of unbundling and the right to advance such arguments in this or any subsequent matter before this or any other Court.

23. Second, the *Slabbinck* Court concluded that the post-petition contract in that case was a post-petition agreement merely because it was signed after the petition date. That court undertook no analysis to address whether the operative events for formation of the post-petition contract occurred prior to filing, or whether the post-petition signing of the document was a mere formality for the sake of appearances, as it was in this Bankruptcy Case. As this Court instructed in *In re Griffin*, those particular facts matter and could be dispositive of the issue. *See Griffin*, 313 B.R. at 762. Thus, the lack of any discussion of the contract formation issue in *Slabbinck* calls its conclusion into question, as well as any reliance upon that conclusion.

24. Semrad also relies on *Slabbinck* for the proposition that the Prepetition and Post-Petition Contracts do not violate Local Rule 2090-5(B) because the *Slabbinck* decision permitted unbundling. Semrad's reliance here is also unavailing. First, Semrad's concession that the Prepetition and Post-Petition Contracts do not unbundle services and fully comply with Local Rule 2090-5(B) should moot any reference to *Slabbinck*. That aside, what Semrad did not mention in the Response is that the unbundling aspect of the *Slabbinck* decision was based heavily upon that court's finding that, under the Michigan Rules of Professional Conduct, performing services post-petition does not constitute a *per se* breach of an attorney's duty of competence. In this Bankruptcy Case, the U.S. Trustee does not make any such argument. Accordingly, the *Slabbinck* Court's conclusion in that regard is irrelevant to the issues at bar. Moreover, the *Slabbinck* Court ignored the local rule in that district which is akin to our Local Rule 2090-5(B). The *Slabbinck* Court made no effort to reconcile its endorsement of unbundling with the express condition in its own local rules mandating that an attorney who files a bankruptcy petition remains counsel of record unless and until the court grants that attorney's motion to withdraw. *See In re Slabbinck*, 482 B.R. at n.5.

Because the *Slabbinck* Court's two positions cannot be reconciled - both endorsing unbundling as well as its own local rules - the decision is unpersuasive, and this Court should not rely on it.

25. Finally, there are material differences between the cases that render the *Slabbinck* decision unpersuasive. For example, while Semrad leads this Court to believe that the prepetition agreements in both cases are substantially identical, they are not. The Prepetition Contract here uses a zero-down structure, states that the Debtor is under no obligation to retain Semrad post-petition, and reserves Semrad's right to withdraw if the Debtor does not enter into a post-petition contract. On the other hand, in *Slabbinck* the prepetition contract allocates specific services between the pre- and post-filing agreements and assigns specific fee amounts to each set of services, and the prepetition contract states expressly that the firm will not represent the debtor after filing the petition unless the debtor enters into a post-petition contract. These distinguishing facts, together with the other infirmities with the *Slabbinck* decision, militate in favor of this Court not affording weight to Semrad's reliance upon it for any purpose.

### B. *Semrad's application of Local Rule 2091-1(B) is factually and legally flawed.*

26. In the Motion, the U. S. Trustee argues that Local Rule 2091-1(B) does not alter Semrad's obligation to comply with Local Rule 2090-5(B), and the limited exception under Local Rule 2091-1(B) does not apply because the Prepetition Contract does not condition Semrad's representation upon entry into a post-petition agreement, as expressly required by the rule. *See* Motion, p. 8-9. Semrad argues that Local Rule 2091-1(B) justifies its Post-Petition Contract and the fees charged thereunder. Semrad's multi-pronged argument here is flawed, and each part will be addressed in turn.

### *i.  Despite Semrad's unsubstantiated contention, the Prepetition Contract was not conditioned upon entry into the Post-Petition Contract.*

27. This Court should find that the Semrad's representation of the Debtor set forth in the Prepetition Contract was not conditioned upon the Debtor's entry into Post-Petition Contract. Even though the Prepetition Contract states that the Debtor is "under no obligation" to enter into a post-petition contract, Semrad contends that provision is merely an "acknowledgement of the Debtor's volition," and the Prepetition Contract remains conditioned upon the Debtor's execution of a post-petition contract.[10] Response, p. 12. Semrad further ignores its own unambiguous language in the Prepetition Contract and instead contends that other language therein suggests that the Prepetition Contract conditioned Semrad's representation upon the Debtor's entry into a post-petition contract. *See* Response, at pp. 12-13. For instance, even though the Prepetition Contract states that Semrad "reserves the right to withdraw" if the Debtor does not enter into a post-petition contract, and not that Semrad's representation of the Debtor is explicitly premised upon the Debtor re-retaining Semrad post-petition, Semrad nonetheless argues the Prepetition Contract effectively conditions Semrad's representation of the Debtor on the Debtor's execution of a post-petition contract.

28. Semrad cannot have it both ways. Either the Prepetition Contract is conditioned upon entry into a post-petition contract, or it is not. Given that the Prepetition Contract states unequivocally that the Debtor was "under no obligation" to enter into a post-petition agreement, and Semrad only "reserved the right" to withdraw, the Court should conclude that Semrad's obligations under the Prepetition Contract are not conditioned on the Debtor's execution of the Post-Petition Contract. *See In Oak Creek Plaza, LLC v. Thrivent Fin. for Lutherans,* 579 B.R.

---

[10] Semrad fails to provide any explanation as to what an "acknowledgement of the Debtor's volition" actually means.

13

460, 465 (N.D. Ill. 2017) (citations omitted) (stating, "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning"). Indeed, Mr. Pryor testified that, in his practice, he typically advises debtors that they are not obligated to enter into post-petition contracts. *See generally* Pryor Dep. T at 59:18-24, 60:1, 65:21-24, 66:1-11. Semrad cannot now disavow the language of the Prepetition Contract and its own conduct by claiming that (i) the "under no obligation" provision relates only to "the Debtor's volition" and (ii) Semrad's reservation of rights should be interpreted as refusal to continue representation in the absence of an executed post-petition contract. Accordingly, because the Prepetition Contract was not conditioned upon the Debtor's entry into a post-petition contract, this Court should find that Semrad's violation of Local Rule 2090-5(B) is not excused as an exception under Local Rule 2091-1(B).

      ii.  ***Local Rule 2091-1(B) does not provide a broad exception to Local Rule 2090-5(B).***

29. This Court should also overrule Semrad's argument that Local Rule 2091-1(B) creates "more than a limited exception" to Local Rule 2090-5(B). *See* Response, p. 13. Without citation to any authority, Semrad argues that Local Rule 2091-1(B) was enacted so that lawyers filing chapter 7 cases for consumer debtors can be paid for their services after the Seventh Circuit's decision in *In re Bethea*. Semrad further contends that Local Rule 2091-1(B) creates "more than a limited exception" to Local Rule 2090-5(B). *See* Response, p. 13. While Semrad is correct that Local Rule 2091-1(B) was enacted in response to *In re Bethea*, this Court should reject Semrad's broad interpretation of Local Rule 2090-5(B).

30. "Where the language of a statute is clear in its application, the court must apply its plain meaning as written." *In re Clifford*, 182 B.R. 229, 231 (Bankr. N.D. Ill. 1995) (Squires, J.). Moreover, "the most reliable indicator of legislative intent is the language of the statute, which is

14

to be given its plain, ordinary and popularly understood meaning." *Winston v. O'Brien*, 773 F.3d 809, 813 (7th Cir. 2014). The rules of statutory construction apply equally to local rules. *See Polo Builders, Inc.*, 388 B.R. at 361.

31. The express language of Local Rule 2091-1(B) is clear and unambiguous. The rule carves out only one, narrow circumstance when counsel may withdraw from representation, notwithstanding Local Rule 2090-5(B). That circumstance is when prepetition representation is "conditioned" upon entry into a post-petition agreement, and a debtor fails to enter into a post-petition agreement. *See* Bankr. N.D. Ill. R. 2091-1(B). The meaning of the term "conditioned" here is clear and should be given its plain and ordinary meaning. *See Winston*, 773 F.3d at 813. There is no legal or factual basis to read Local Rule 2091-1(B) any broader than the express language permits.

32. Despite the foregoing, Semrad argues, without citation to authority, that the term "conditioned" should be read out of the rule such that the exception could be used more broadly. Semrad's contention violates the rules of statutory construction and is contrary to the express and plain language of the rule. When Local Rule 2091-1(B) was enacted, the Rules Committee could have drafted the rule more broadly to allow post-petition contracts without condition, as Semrad now argues. However, it did not, and there is no basis to read the rule any broader than the express text provides. *See Winston*, 773 F.3d at 813. As such, this Court should interpret Local Rule 2091-1(B) according to its express and plain language and not afford it any broader meaning.

33. Finally, Semrad claims that Local Rule 2091-1(B) must provide a wide-reaching exception for the allowance of post-petition agreements because it would otherwise be difficult to

15

reconcile Local Rule 2091-1(B) with Local Rule 2090-5(B). *See* Response, p. 13.[11] That contention is flawed. The language of Local Rule 2091-1(B) provides specific instruction on how to achieve simultaneous compliance with it and Local Rule 2090-5(B). The two rules can in fact be reconciled by use of a prepetition contract that does not unbundle services and that is expressly conditioned upon entry into a post-petition contract. The fact that such a reading may impede Semrad's ability to offer zero-down representation does not support Semrad's expansive interpretation of the rule. For these reasons, this Court should apply Local Rule 2091-1(B) as written and overrule Semrad's arguments to the contrary.

### C. *The Zero-Down Fee Structure violates Bankruptcy Code Section 528(a)(1)(A).*

34. Both the Prepetition and Post-Petition Contracts violate Section 528(a)(1)(A) of the Bankruptcy Code because there is no way to tell what services Semrad agrees to provide to the Debtor at any given point in the case (*i.e.*, pre- vs. post-petition) and what different services are proposed under the respective agreements. *See* Motion, pp. 10-11. Nothing in Semrad's Response alters that conclusion.

35. Mr. Pryor was questioned about this issue during his deposition, and he failed to provide clarity. Not only was Mr. Pryor unable to differentiate services between the Prepetition and Post-Petition Contracts, but he testified repeatedly that the services provided under the Post-Petition Contract were merely a continuation of those agreed to under the Prepetition Contract. In other words, the only reason the Post-Petition Contract existed was so that Semrad could "continuously" represent the Debtor. Pryor Dep. T at 62:21-24, 63:1-8, 64:20-24, 65:1-14, 67:13-24, 68:1-24, 69:1-23. That contention contradicts Semrad's argument in the Response that, in

---

[11] In the Response, Semrad incorrectly argues that the U.S. Trustee is opposed to any post-petition contract. To be clear, the U.S. Trustee does not advance any such argument, and Semrad's attempt to mischaracterize the U.S. Trustee position should not be considered.

16

compliance with Local Rule 2090-5(B), Semrad was obligated under the Prepetition Contract to serve as Debtor's counsel for all purposes in the Bankruptcy Case, and highlights the inherent flaw with Semrad's position.

36. Perhaps more telling of Semrad's violation of Section 528(a)(1)(A) is the Debtor's deposition testimony. The Debtor testified that he did not understand that he signed two, distinct fee agreements. Novak Dep. T at 18:7-21, 19:3-23. Instead, the Debtor believed he signed one agreement in duplicate so that he and the firm each could have an original copy. *Id*. Given this testimony, it strains credulity for Semrad to argue that the Prepetition and Post-Petition Contracts are clear and conspicuous, as Section 528(a)(1)(A) requires.

37. Semrad's written response to this aspect of the Motion is unavailing, as it ignores the aforementioned facts and instead focuses only on minor or non-material aspects of the agreements. *See* Response, p. 16. Since Semrad cannot overcome its contradictory positions and the Debtor's understanding of the fee agreements in his own words, the Court should overrule Semrad's Response and invalidate the fee agreements used in this case under Section 528(a)(1)(A).

**Point III**

**Semrad's post-petition fee exceeds the reasonable value of services provided post-petition.**

38. While Semrad argues that its post-petition services justify a fee of $1,765, the facts prove otherwise. Semrad does not keep contemporaneous time records in flat fee cases, and admittedly created the description of services annexed to its Response only after the Motion was filed, thereby calling into question the nature and time spent for the noted services. *See* Response, at Ex. A; Pryor Dep. T at 18:7-9, 18:24, 19:1-4, 19:8-12, 21:13-17. Additionally, the 14 categories of potential services recited in the Response that could be required in a chapter 7 case are a red-herring, as Semrad admittedly did not perform most of those services in this Bankruptcy Case. *See*

17

Response, at pg. 4-5; Pryor Dep. T. at 75:7-24, 76:1-24, 77:1-24, 78:1-24, 79:1-24, 80:1-24, 81:1. Finally, Semrad's use of "Chapter 7 Disclaimers" abdicates responsibility for certain services that fall within the scope of services required under the Prepetition Contract and Local Rule 2090-5(B). For these reasons, as set forth more fully below, this Court should find that Semrad's justification for the extent of its fee lacks merit.

### A.   *Semrad's description of services lacks credibility.*

39. In large part, Semrad relies upon its manually prepared description of services (the "Fee Table") to demonstrate that the value of services provided approximates the post-petition fee of $1,765. Yet, Mr. Pryor testified that Semrad does not keep contemporaneous time records in flat fee cases, that he did not know how the Fee Table was prepared, and that he had never before seen that document. Pryor Dep. T at 17:15-24, 18:1, 21:1-17. In fact, the Fee Table was not created contemporaneously with the services provided, and certain of the entries call into question the reliability of the document. For example, the Fee Table reflects that, on March 20, 2018, Semrad attorney Janna Quarles spent .25 of an hour on "341 prep" and .50 of an hour for "341 hearing." *See* Response, at Ex. A. The U.S. Trustee's records reflect that Ms. Quarles appeared for 12 different 341 meetings on March 20, and the Debtor's 341 meeting from start to finish lasted fewer than three minutes. Despite those facts, the Fee Table reflects that Ms. Quarles spent almost an hour on the Debtor's matter alone. Given the number of other clients and cases to which Ms. Quarles was required to attend, and the lack of any issues in the Debtor's case, the time reflected on the Fee Table for the Debtor's 341 "prep" and "hearing" is questionable. The fact that there is no contemporaneous time record to cross reference the Fee Table's entry bolsters this conclusion.

40. Additionally, virtually all of the other services to which Semrad points to justify its post-petition fee are just a series of entries of nominal time (15 x .1; 5 x .2; and 2 x .3), and eight

18

of the Fee Table entries reflect work completed by non-attorney staff. Other than appearing for the 341 meeting, the only legal service provided post-petition was the Debtor's entry, and then rescission, into a reaffirmation agreement. Because the nature and contents of Semrad's Fee Table call its reliability into question, the Court should find that the Fee Table does not demonstrate the value of Semrad's fees and should not rely on it.

### B. *Semrad's argument in the Response about the nature and extent of its post-petition services is largely irrelevant.*

41. In the Response, Semrad attempts to justify its post-petition fee by reciting a list of 14 potential services that *may* be provided in a chapter 7 case. *See* Response, pp. 4-5. However, Mr. Pryor's deposition testimony makes clear that nine of the 14 enumerated services were not required or performed in this Bankruptcy Case. Thus, the lengthy list is a red-herring and provides no factual basis for Semrad's position.[12] Semrad cannot justify its fee by pointing to speculative events that never actually occurred, such as filing a motion for relief from the automatic stay defending against an objection to discharge. By all accounts (*i.e.*, docket, schedules, and 341 hearing), this Bankruptcy Case was largely uneventful. Despite Semrad's arguments in the Response, the Fee Table proves the U.S. Trustee's allegations that this Bankruptcy Case required virtually no post-petition services, other than those related to the 341 meeting and one

---

[12] Moreover, while professing that its post-petition fee is reasonable, Semrad fails to reference in its Response the "Chapter 7 Disclaimers" it required the Debtor to sign. Under the Chapter 7 Disclaimers, Semrad abdicates responsibility for certain services that fall within the scope of services required under the Prepetition Contract and Local Rule 2090-5(B). The Chapter 7 Disclaimers cannot be reconciled with Semrad's concession that, under Local Rule 2090-5(B) and the terms of the Prepetition Contract, it agreed to serve as the Debtor's attorney for all purposes in the bankruptcy case. To the extent the court concludes the Chapter 7 Disclaimers relate directly or indirectly to the fees promised to be paid in the Bankruptcy Case, Semrad violated Local Rule 2016-1 by failing to file them. A copy of the Chapter 7 Disclaimers is attached hereto and incorporated herein as Exhibit D.

19

reaffirmation agreement. For these reasons, this Court should find Semrad's justification for its post-petition fee unavailing.

## Conclusion

42. Based on the foregoing, the U.S. Trustee requests that this Court grant the Motion, find the Post-Petition Contract unenforceable, and grant any further relief that the Court deems just and proper.

                                    RESPECTFULLY SUBMITTED:

                                    PATRICK S. LAYNG,
                                    UNITED STATES TRUSTEE

DATED: June 27, 2018         By: */s/Adam G. Brief*
                                    Adam G. Brief, Assistant U.S. Trustee
                                    Roman Sukley, Trial Attorney
                                    Elizabeth R. Brusa, Trial Attorney
                                    Office of the U.S. Trustee
                                    219 South Dearborn, Room 873
                                    Chicago, Illinois  60604
                                    (312) 886-5786